# EXHIBIT A

**GIBSON & PERKINS, PC**
Walter J. Timby, III
Attorney ID No. 23894
Paul Fellman
Attorney ID No. 316294
100 W. 6th Street, Suite 204
Media, PA  19063
(610) 565-1708
(610) 565-4358 Fax
wtimby@gibperk.com

Attorneys for Plaintiff

| GUIDO'S EXPRESS INC. A/K/A KEY PIZZA | : | COURT OF COMMON PLEAS |
|---|---|---|
| | : | PHILADELPHIA COUNTY, PA |
| Plaintiff, | : | |
| v. | : | Civil Action No. 230602627 |
| | : | |
| WESTERN WORLD INSURANCE COMPANY | : | |
| | : | |
| and | : | |
| | : | |
| AIG CLAIMS INC. | : | |
| Defendants. | : | |

**NOTICE TO DEFEND**

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal. |

| | |
|---|---|
| Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>1101 Market St., 11th Floor<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333 | Asociacion De Licenciados De Filadelfia Servicio<br>De Referencia E Informacion Legal 1101 Market<br>St., 11th Piso<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333 |

_____
Walter J. Timby, III

Case ID: 230602627

**GIBSON & PERKINS, PC**                                    **Attorneys for Plaintiff**

Walter J. Timby, III
Attorney ID No. 23894
Paul Fellman
Attorney ID No. 316294
100 W. 6th Street, Suite 204
Media, PA  19063
(610) 565-1708
(610) 565-4358 Fax
wtimby@gibperk.com



Filed and Attested by the
Office of Judicial Records
06 SEP 2023 04:29 pm
G. IMPERATO

| | | |
|---|---|---|
| GUIDO'S EXPRESS INC. A/K/A KEY PIZZA | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY, PA |
| Plaintiff, | : | |
| v. | : | Civil Action No. 230602627 |
| | : | |
| WESTERN WORLD INSURANCE COMPANY | : | |
| | : | |
| and | : | |
| | : | |
| AIG CLAIMS INC. | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

### I.  PARTIES

1.     Plaintiff Guido's Express, Inc. ("Guido's") d/b/a Key Pizza is a Pennsylvania

Corporation which operated a pizza restaurant with a business office located at 2329 E. York

Street, Philadelphia, PA 19125 ("2329 York").

2.     Western World Insurance Company ("Western World") is an insurance company

with an address of  300 Kimball Drive, Suite 500, Parsippany New Jersey, 07054 and authorized

to issue policies of insurance insuring Commercial Personal Property and authorized to conduct

business in the Commonwealth of Pennsylvania.

3.     AIG Claims, Inc. is an authorized Administrator for Claim for Western World

Insurance Company, handling and making decisions regarding payment of claims against Western

World.

1

II.     **STATEMENT OF FACTS**

    A.     **Western World Policy of Insurance**

4.     On February 18, 2022, Western World issued a Commercial Property Insurance Policy NPP8596764 ("Policy") to Guido's insuring Guido's for Commercial Property Coverage and Business Personal Property Limits of Insurance of One Hundred and Fifty-Two Thousand Dollars ($152,000.00). (Common Policy Declarations Page is attached hereto as Exhibit "A". Guido's is not in possession of the entire Policy at this time and cannot attach it to the Complaint).

5.     The Policy of Western World and administered by AIG Claims provides:

    **A. Coverage**

    We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

       b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations are on the York Business Personal Property – Separation of Coverage Form:

       (1) Furniture and fixtures;

       (2) Machinery and equipment;

       (3) "Stock";

       (4) All other personal property owned by you and used in your business…:

       (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations, or additions:

          (a) made a part of the building or structure you occupy but do not own; and

       (b) You acquired or made at your expense but cannot legally remove.

2

Case ID: 230602627

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

D. <u>Additional Coverage-Collapse</u>. The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse as described and limited in **D. 1** through **D .7.**

1. For the purpose of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of the building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is because by one or more of the following…

c. Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

6.      Guido's paid all premiums and was in full compliance with all terms of the Policy at the time of loss of September 14, 2022.

7.      On March 15, 2022, Guido's entered into a Lease Agreement with the Landlords Stefanos Haviaras, Katerina Haviaras, Anhela Haviaras and John Haviaras for the building and real property located at 2329 E. York Street, Philadelphia, PA 19125. (Lease Agreement is attached hereto as Exhibit "B").

8.      On September 14, 2022, at approximately 9:30-10:00 AM, the building located at 2329 E. York collapsed due to an abrupt collapse occurring during the course of construction resulting from defective material or methods in construction, remodeling, or renovation while the contractors were working on site at 2331 E York Street.

3

Case ID: 230602627

9.      As a result of the abrupt collapse and total destruction of 2329 E. York, Guido's has incurred the loss of Business Personal Property, equipment, past and future business income for a period of the five (5) year term and renewal of the Lease for an additional ten (10) years.

10.      On or before December 20, 2022, Guido's presented a Notice of Claim and Proof of Loss of Business Personal Property Loss in an amount in excess of $152,00.00 to Western World and its authorized administrator, AIG Claims, Inc., pursuant to the Policy and requested payment of Business Personal Property Losses insured by the Western World Policy and caused by the abrupt collapse and total destruction of 2329 E. York Street.

## CAUSE OF THE COLLAPSE

### A.      Philadelphia License and Inspections Violations

11.      On or before  June 10, 2022, 2331 E York LLC, the neighboring property owner, began demolition, excavation and construction of the property located at 2331 E York Street, Philadelphia. ("Construction Work")

12.      2331 E York LLC ("Owner") retained PASP, LLC, Mona Construction, Clancy and Clancy Engineers, Mangual Demolition, Inc., and Dimension Global Construction and other subcontractors ( the "Contractors") to complete the above-described Construction Work.

13.      The collapse of 2329 E York occurred while the property and building at 2331 E York owned by 2331 E York, LLC was being excavated and constructed in an incompetent, reckless, and dangerous manner.

14.      2331, E York, LLC ("Owner") and Mona, PASP, Dimension, Clancy and Mangual (the "Contractors") failed to take the necessary steps to protect and ensure the safety of the excavation and construction site at 2331 E York and the adjacent property at 2329 York occupied by Guido's.

Case ID: 230602627

15.     The Contractors' conduct, as described herein, demonstrated a disregard for the safety of Guido's at 2329 E York.

16.     At all relevant times, Owner and Contractors purported to undertake the supervision of the project at 2331 E York Street and in connection therewith failed to establish plans, recommendations, designs, procedures, and specifications for the performance of said work.

17.     The Owner and Contractors did not undertake the inspection and supervision of the work and breached a duty owed to those persons affected by the work, including the adjacent building tenants of 2329 E York, to prevent all hazards, such as the collapse of the adjoining building.

18.     The damages and loss of income sustained by the Plaintiff, Guido's, were caused by the use of defective material or methods in construction, remodeling, or renovation and other conduct of Owner and Contractors acting by and through their agents, servants, workers and/or employees, both generally and in the following particular respects:

       a.      failing to provide Plaintiff a safe place in which to conduct its business under the Lease.

       b.      failing to properly develop, plan, plot design, coordinate, supervise, inspect, maintain, and manage the premises at 2329 E. York and their condition during the project at 2331.

       c.      failing to properly inspect or require that Owner, Contractors, and the others under their control inspect 2329 E. York and the Project thoroughly and regularly to identify, remedy and post warnings about dangerous and hazardous conditions caused to 2329 E. York by the Project and its owners, contractors, and subcontractors;

Case ID: 230602627

d.      breaching their duties under the Restatement (Second) of Torts, including but not limited to §§ 323, 324, 343, 416 and 427;

e.      Failing to hire competent employees, safety inspectors, contractors, subcontractors, advisors, managers, equipment providers, material suppliers and others to ensure the safety and condition of 2329 E. York and confirm that it was free of hazards;

f.      failing to warn Guido's of the peculiar, dangerous and/or unsafe conditions existing on the property at 2329 York and 2331 York;

g.      exposing Guido's, a business invitee, to unreasonable danger by failing to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, training, supervision, measures, and plans to ensure the safe condition of 2339 E York;

h.      violating and failing to comply with all federal and state statutes, local ordinances, and all other rules, enactments, or regulations applicable, or in effect, be they administrative, industry-wide;

i.      failing to and/or failing to ensure that all contractors, subcontractors, material suppliers and others engaged on the Project site furnish materials and equipment and perform construction services in conformity with the standard of care prevailing in the industry at the time in question to prevent harm and damages to 2329 York;

j.      failing to properly supervise the Project progress and any dangerous conditions created by the Project to 2329 E York, including the work of all

6

Case ID: 230602627

contractors, subcontractors, material suppliers and others engaged on the Project Site;

k.      failing to demand the construction and excavation work at 2331 E York cease and/or postpone construction work until proper and necessary precautions could be taken to safeguard 2329 E York  and its tenant, including Guido's;

l.      failing to develop, implement and coordinate a comprehensive safety program for the safety of 2329 E York;

m.      failing to recommend, provide and enforce frequent inspections of 2329 E York during the work at the Project and all equipment, procedures, and devices necessary to assure the safety and condition of 2329 E York;

n.      allowing contractors, subcontractors, material and equipment suppliers and others engaged at the Project to perform work without a comprehensive site-specific safety plan in place regarding the impact of the Project activities on 2329 E York;

o.      failing to perform a comprehensive safety analysis of the condition of 2329 E York and the imminent danger of collapse caused by the Project, the construction site and the tasks underway on the date of the collapse and to promulgate safety rules and practices accordingly;

p.      failing to implement, require and enforce a policy that all contractors, subcontractors, material and equipment suppliers and all workers on the Project site understand, obey, and sign off on site-specific and task-specific safety rules so 2329 E York would not collapse and cause damages to Guido's;

Case ID: 230602627

q.      failing to require that the contractor and/or subcontractor safety program of the Project provide Haviaras and 2331 E York LLC with a specific plan related to the safety of 2329 E York and the work being done at the Project;

r.      failing to hire and retain a properly trained engineer or individual qualified to assess the risk and potential hazards, including a collapse related to 2329 E York, in order to minimize the hazards and timely coordinate applicable safety procedures;

s.      failing to evaluate potential hazards in order to minimize these hazards and timely coordinate the work of the crews at 2331 E York;

t.      failing to provide and/or require communication between Guido's and the Owner and Contractors at the Project to ensure the safety of 2329 E York;

u.      failing to coordinate with contractors and subcontractors to ensure the work was performed and sequenced safely for the safety of 2329 E York;

v.      permitting the work that was being done in an unsafe manner at all times at 2331 E York;

w.      failing to provide special precautions which would have protected Guido's from the particular and unreasonable risk and/or risks of harm which Owner and Contractors recognized or should have recognized were likely to be created by the work being done on the Project;

x.      failing to sufficiently inspect the jobsite and 2329 E York and allowing dangerous hazards to exist on the Project and impact 2329 E York; and

8

Case ID: 230602627

y.      failing to ensure that all contractors, subcontractors, material suppliers and others engaged on the Project site employed appropriate, safe means and methods for performing their work at all times.

19.     As a direct and proximate result of the carelessness, negligence, gross negligence and other liability-producing conduct of the Owner and Contractors, Guido's sustained serious, significant, and substantial loss of property as set forth herein.

20.     The Owner and Contractors' acts and/or omissions were a substantial factor in and the factual cause of the harm and damages to Guido's.

21.     The total loss and destruction of 2329 E York Street was caused by the conduct and Construction Activities of the Owner, 2331 E York, LLC, PASP, Mona, Dimension, Clancy, Clancy Associates, and Mangual, and their acts and/or omissions as described above were a substantial factor in and the factual cause of the harm and damages to Guido's.

22.     The damages and losses incurred by Guido's was a Covered Loss as described in the Policy and was due to the conduct of the Owner and Contractors.

**DENIAL OF COVERAGE BY WESTERN WORLD AND AIG CLAIMS**

23.     On December 20, 2022, Western World, through its authorized administrator AIG Claims, Inc., issued a denial and disclaimer of coverage for Guido's Business Personal Property Loss as set forth in the Proof of Claim submitted by Guido's.

24.     Western World's denial and disclaimer relied upon Commercial Property Coverage Form C P 10 30 0607 – Special Form:

**B.  Exclusions**

1.  We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

9

Case ID: 230602627

      b. **Earth Movement**

(4) Earth sinking (other than sinkhole collapse), rising, or shifting, including soil conditions, which cause settling, cracking or other does arrangement of foundations, or other parts of Realty. Soil conditions include contraction, expansion, freezing point, erosion, improperly compacted soil, and the action of water under the ground surface."

25. Western World and AIG Claims concluded that the failure of the front portion of the building at 2329 E. York Street was caused by stormwater runoff from the gap between the building, the partially constructed foundation, the absence of lateral soil support after excavation for the foundation to the south, and historical deterioration of the foundation from the absence of drainage in the south facing stucco system.

26. Western World and AIG concluded rain events on September 6 and 11, 2022, and not the construction activities on the day of the abrupt collapse, had a cumulative effect on the soil washout at the south side of the building contributed to the failure.

27. There is no evidence to support the rain events of September 6 and 11, eight days before the collapse, led to the sudden collapse that occurred during the construction activities at 2331 E York Street.

28. The conclusion of Western World and AIG is unsupported by the facts and completely ignores the use of defective material or methods in construction, remodeling, or renovation of the Owner and Contractors on site at 2331 E York

29. Western World and AIG Claims are in breach of the terms of the Policy of Insurance as to the cause of the collapse.

## COUNT I-BREACH OF CONTRACT

## GUIDO'S EXPRESS, INC. A/K/A KEY PIZZA V. WESTERN WORLD INSURANCE COMPANY AND AIG CLAIMS, INC.

Case ID: 230602627

30. Plaintiff Guido's incorporates Paragraphs One through Twenty-Nine as though set forth fully herein at length.

31. Defendants' denial, disclaimer and refusal to provide insurance coverage for Plaintiff's loss constitutes a breach of the Policy of Insurance Contract.

32. Defendants are obligated by the terms of the Policy of Insurance to indemnify Plaintiff's losses.

33. Defendants' refusal to indemnify Plaintiff's losses constitutes a breach of the insurance contract issued to Guido's Express.

34. As a result of the breach of the Policy of Insurance by Western World and AiG Claims Inc., Plaintiff Guido's Express a/k/a Key Pizza has incurred damages and claims damages as a result of the breach against Defendants Western World Insurance and AIG Claims, their authorized agent.

**WHEREFORE**, Plaintiff Guido's Express, Inc. demands judgment in excess of Fifty Thousand Dollars in compensatory damages, delay damages, and interest and allowable cost of suit and bring this action to recover such damages against Defendants Western World Insurance and AIG Claims, their authorized agent.

GIBSON & PERKINS, P.C.

_____
WALTER J. TIMBY, III

11

Case ID: 230602627

## VERIFICATION

*Filed and Attested by the
Office of Judicial Records
06 SEP 2023 04:29 pm
G. IMPERATO*

I, Umair Ahmed Cheema, Shareholder of Plaintiff Guido's Express Inc. a/ka Key Pizza, verify that the facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that the statements made herein are subject to the penalties of 18 Pa. C.S. Section 4904 relating to unsworn falsification to authorities.

Date: 09/06/2023.

Umair Ahmed Cheema

**GIBSON & PERKINS, PC**
Walter J. Timby, III
Attorney ID No. 23894
Paul Fellman
Attorney ID No. 316294
100 W. 6th Street, Suite 204
Media, PA  19063
(610) 565-1708
(610) 565-4358 Fax
wtimby@gibperk.com

**Attorneys for Plaintiff**

Filed and Attested by the
Office of Judicial Records
06 SEP 2023 04:29 pm
G. IMPERATO

| | | |
|---|---|---|
| GUIDO'S EXPRESS INC. A/K/A KEY PIZZA | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY, PA |
| Plaintiff, | : | |
| v. | : | NO. June 2023 02627 |
| | : | |
| WESTERN WORLD INSURANCE COMPANY | : | |
| | : | |
| AND | : | |
| | : | |
| AIG CLAIMS INC. | : | |
| Defendants | : | |

## CERTIFICATE OF SERVICE

I, Walter J. Timby, III hereby certify that a true and correct copy of Plaintiff's Complaint was served upon the Attorney of Record via ECF.

Date:   09/06/23

GIBSON & PERKINS, PC

_Walter J. Timby IV_

Walter J. Timby, III

COMMERCIAL PROPERTY
CP 00 10 04 02

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. – Definitions.**

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

  **(1)** Completed additions;

  **(2)** Fixtures, including outdoor fixtures;

  **(3)** Permanently installed:

   **(a)** Machinery and

   **(b)** Equipment;

  **(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

   **(a)** Fire extinguishing equipment;

   **(b)** Outdoor furniture;

   **(c)** Floor coverings; and

   **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

  **(5)** If not covered by other insurance:

   **(a)** Additions under construction, alterations and repairs to the building or structure;

   **(b)** Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

  **(1)** Furniture and fixtures;

  **(2)** Machinery and equipment;

  **(3)** "Stock";

  **(4)** All other personal property owned by you and used in your business;

  **(5)** Labor, materials or services furnished or arranged by you on personal property of others;

  **(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

   **(a)** Made a part of the building or structure you occupy but do not own; and

   **(b)** You acquired or made at your expense but cannot legally remove;

  **(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

© ISO Properties, Inc., 2001


Case ID: 230602627

**c. Personal Property Of Others** that is:

   **(1)** In your care, custody or control; and

   **(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This Paragraph **n.,** does not apply to your "stock" of prepackaged software.

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

   **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

   **(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

   **(c)** Rowboats or canoes out of water at the described premises; or

   **(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

 © ISO Properties, Inc., 2001

Case ID: 230602627


**q.** The following property while outside of buildings:

    **(1)** Grain, hay, straw or other crops;

    **(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

## 3. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

## 4. Additional Coverages

### a. Debris Removal

    **(1)** Subject to Paragraphs **(3)** and **(4),** we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)** Debris Removal does not apply to costs to:

      **(a)** Extract "pollutants" from land or water; or

      **(b)** Remove, restore or replace polluted land or water.

    **(3)** Subject to the exceptions in Paragraph **(4),** the following provisions apply:

      **(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      **(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    **(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

      **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

      **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

    Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

    **(5)** Examples

    The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---:|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 - $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

Case ID: 230602627

**Example #2**

| | | | |
|---|---|---|---|
| Limit of Insurance | | $ | 90,000 |
| Amount of Deductible | | $ | 500 |
| Amount of Loss | | $ | 80,000 |
| Amount of Loss Payable | | $ | 79,500 |
| | | ($80,000 - $500) | |
| Debris Removal Expense | | $ | 30,000 |
| Debris Removal Expense Payable | | | |
| | Basic Amount | $ | 10,500 |
| | Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

b. **Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

c. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

d. **Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

e. **Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

© ISO Properties, Inc., 2001



Case ID: 230602627

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

  **(a)** You were required to comply with before the loss, even when the building was undamaged; and

  **(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

  **(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

  **(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

  **(a)** We will not pay for the Increased Cost of Construction:

  **(i)** Until the property is actually repaired or replaced, at the same or another premises; and

  **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  **(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

  **(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

Case ID: 230602627

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

**(d)** The Covered Causes Of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

© ISO Properties, Inc., 2001    CP 00 10 04 02

Case ID: 230602627


**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

 © ISO Properties, Inc., 2001 Case ID: 230602627 

(b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

© ISO Properties, Inc., 2001

CP 00 10 04 02



Case ID: 230602627

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100

– ___250___

$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1:   $    70,000

(exceeds Limit of Insurance plus Deductible)

Loss to Bldg. 2:   $    90,000

(exceeds Limit of Insurance plus Deductible)

Loss Payable – Bldg. 1:     $60,000

(Limit of Insurance)

Loss Payable – Bldg. 2:     $80,000

(Limit of Insurance)

Total amount of loss payable:

$140,000

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Case ID: 230602627

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

© ISO Properties, Inc., 2001

CP 00 10 04 02


Case ID: 230602627

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1);**

 © ISO Properties, Inc., 2001

Case ID: 230602627


**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2);** and

**(4)** Subtract the deductible from the figure determined in Step **(3).**

We will pay the amount determined in Step **(4)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

When:  The value of the property is $ 250,000
The Coinsurance percentage for it is 80%
The Limit of Insurance for it is $ 100,000
The Deductible is $ 250
The amount of loss is $ 40,000

Step **(1):** $250,000 x 80% = $200,000
(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

When:  The value of the property is $ 250,000
The Coinsurance percentage for it is 80%
The Limit of Insurance for it is $ 200,000
The Deductible is $ 250
The amount of loss is $ 40,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

When:  The value of property is:
Bldg. at Location No. 1 $ 75,000
Bldg. at Location No. 2 $ 100,000
Personal Property at Location No. 2 $ 75,000
$ 250,000
The Coinsurance percentage for it is 90%
The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is $ 180,000
The Deductible is $ 1,000
The amount of loss is:
Bldg. at Location No. 2 $ 30,000
Personal Property at Location No. 2. $ 20,000
$ 50,000

Step **(1):** $250,000 x 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):** $180,000 ÷ $225,000 = .80

Step **(3):** $50,000 x .80 = $40,000

Step **(4):** $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

Case ID: 230602627

**(3)** Has notified us of any change in owner-ship, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgage-holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

## G. Optional Coverages

If shown as applicable in the Declarations, the fol-lowing Optional Coverages apply separately to each item.

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that prop-erty than the proportion that the Limit of In-surance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Cov-erage shown in the Declarations is not ex-tended, the Additional Condition, Coinsur-ance, is reinstated and this Optional Cover-age expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applied will auto-matically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | | | |
|---|---|---|---|
| | The applicable Limit of Insurance is | $ | 100,000 |
| | The annual percentage increase is | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Cov-erage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

Case ID: 230602627



**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

   © ISO Properties, Inc., 2001

Case ID: 230602627


REV 1.8.22



*Filed and Attested by the Office of Judicial Records 06 SEP 2023 04:29 pm G. IMPERATO*

## LEASE AGREEMENT

**THIS LEASE AGREEMENT,** made the _15_ day of _March_ , 2022, by and between **STEFANOS HAVIARAS** authorized agent for owners of record ("Lessor"), of the one part, and **GUIDO'S EXPRESS INC** ("Lessee"), of the other part.

THIS LEASE REPLACES AND SUPERSEDES ALL PRIOR LEASES BETWEEN THE PARTIES HERETO FOR THE DEMISED PREMISES DESCRIBED BELOW

### 1.   DEMISED PREMISES

Lessor does hereby demise and let unto Lessee the first floor, basement and garage of the building located at 2329 E York Street Philadelphia, Pennsylvania ("Demised Premises").

### 2.   TERM

This Lease shall be for the term of approximately five (5) years beginning on the date hereof ("Lease Commencement Date") and shall end (unless sooner terminated as provided herein) on the last day of the month within which the fifth (5th) anniversary of the Lease Commencement Date occurs.

### 3.   USE

Lessee shall use the Demised Premises as pizzeria restaurant and for no other purpose.

### 4.   PLACE OF PAYMENT

All rent shall be payable without prior notice or demand to the Lessor, 24 Ridgewood Pl Warminster PA 18974 or at such other place as Lessor may from time to time designate by notice in writing.

### 5.   AFFIRMATIVE COVENANTS OF TENANT

Lessee agrees:

(a)      To comply at its own cost and expense and in every respect with any and all laws, orders, rules and requirements of any constituted public authorities, and all federal, county, state and municipal governments, now in force or that may be enacted hereafter, whether foreseen or unforeseen, applicable to Lessee, the Demised Premises and its use of the Demised

1

Premises, including the sign license, and to save Lessor harmless from penalties, fines, costs, expenses or damages resulting from Lessee's failure to do so;

      (b)     To give Lessor prompt written notice of any accident, fire or damage occurring on or to the Demised Premises and to use every reasonable precaution against fire;

      (c)     To dispose all trash and refuse in accordance with municipal regulations;

      (d)     To keep the Demised Premises sufficiently heated to prevent freezing of water pipes and fixtures;

      (e)     To keep the outside areas and sidewalks adjoining the Demised Premises clean and free from rubbish, snow and ice;

      (g)     To keep the Demised Premises clean, orderly, sanitary and free from objectionable odors and from insects, vermin and other pests;

      (h)     Not to operate any machinery, or conduct his business in a way that is harmful to the Demised Premises or the Building, or disturbing to other tenants;

      (i)     Not to store, keep or bring into the Demised Premises, other than in the ordinary course of business as permitted by applicable law, any hazardous substances as defined in any federal, state or local statute, ordinance or regulation.

    **6.**     **<u>MINIMUM RENT</u>**

      (a)     During the term of this Lease, Lessee shall pay to Lessor, as monthly minimum rent, without demand or any right of set-off, the following rents:

| TERM | ANNUAL RENT | MONTHLY RENT |
|---|---|---|
| Year 1 | $30,000.00 | $2,500.00 |
| Year 2 | $31,200.00 | ~~$2,600.00~~ 2625 ~ |
| Year 3 | $32,448.00 | ~~$2,704.00~~ 2756.25 |
| Year 4 | $33,745.92 | ~~$2,812.16~~ 2894.06 |
| Year 5 | $35,095.75 | ~~$2,924.64~~ 3038.76 |

Case ID: 221202637
Case ID: 230602627

(b)     The above annual minimum rent shall be paid in monthly installments in advance, on the first day of each month without offset or demand. If the Lease Commencement Date falls on a day other than the first day of a calendar month, minimum rent shall be pro rated on a per diem basis from the Lease Commencement Date to the last day of such calendar month, and such apportioned sum shall be paid on the Lease Commencement Date.

(c)     The first monthly installment of minimum rent shall be paid on the execution hereof.

(d)     Provided Lessee is not in default of any of the provisions of the Lease, Lessee shall have the option to renew this Lease for two (2) additional periods of five (5) years each commencing on the date on which the then current term expires by giving written notice of the exercise thereof to Lessor at least six (6) months prior to the expiration of the then current term. All the terms and conditions applicable to the original term hereof shall be applicable to such renewal (except for the option contained in this section). The minimum rent during the option terms shall be increased annually by 5.0% and shall payable in advance on the first day of each month.

(e)     In addition to minimum rent, all other payments to be made by Lessee to Lessor shall be deemed to be, and shall become, additional rent hereunder whether or not the same be designated as such. Unless otherwise provided elsewhere in this Lease, additional rent shall be due and payable upon the earlier of ten (10) days after demand is made therefore or together with the next succeeding installment of minimum rent. Lessor shall have the same remedies for failure to pay additional rent as for a non-payment of minimum rent.

7.     **ALTERATIONS BY LESSEE**

(a)     Lessor agrees that Lessee may make, at Lessee's own expense, any minor interior, nonstructural alterations, repairs, replacements or additions to the Demised Premises provided that all work done by Lessee shall comply with applicable electrical, plumbing, safety, building and other codes including, but not limited to, the applicable provisions of the Americans With Disabilities Act and warrants to Lessor that all work shall be completed in a good and workmanlike manner in accordance with the rules and regulations of the local board of fire insurance underwriters.

(b)     Lessee warrants that all work done by Lessee hereunder shall comply with

3

Case ID: 221202637
Case ID: 230602627

applicable electrical, plumbing, safety, building and other codes including, but not limited to the applicable provisions of the Americans with Disabilities Act and warrant to the other that all work shall be completed in a good and workmanlike manner.

(c)    Lessee agrees not to commence any construction work upon any portions of the Demised Premises until Lessor has received a copy of Lessee's Plans and Specifications. Any changes or additions to the exterior of the building or to any other outside area of the Demised Premises shall require the prior written approval of Lessor, which consent shall not be unreasonably withheld, conditioned or delayed.

(d)    Lessee shall, at Lessee's own expense, promptly remove from the Demised Premises and the Building area all trash and debris which may accumulate in connection with Lessee's work on the Demised Premises.

(e)    Prior to entering upon the Demised Premises, Lessee shall furnish to Lessor a duplicate original insurance policy, an insurance binder (countersigned by insurer), or Evidence of Insurance (in form ACORD 25) for each of the insurance policies Lessee is required to carry in compliance with his obligations under this Lease and upon renewals not less than ten (10) days prior to the expiration of any such policy.

**8.**     **POSSESSION**

Delivery of possession within the meaning of this Lease shall be accomplished by Lessor's delivery to Lessee of a fully executed copy of this Lease and the keys to the Demised Premises. Except as expressly set forth elsewhere herein, all of the obligations and covenants of Lessee herein shall commence as of the delivery of possession. The Demised Premises are being delivered in an "AS IS" condition.

**9.**     **USE AND OCCUPANCY AND REAL ESTATE TAXES**

Commencing on the delivery of possession, Lessee agrees to pay to Lessor, as additional rent,

(a)    One half (1/2) of the Philadelphia Real Estate Taxes and

(b)    Lessee's share of the   Philadelphia Use and Occupancy tax assessed against the Demised Premises both of which shall be paid to Lessor within ten (10) days from the date of invoice.

**10.**     **TRASH COLLECTION**

Lessee shall arrange and pay for the removal of all trash generated by Lessee at the

4

Demised Premises. Lessee shall comply at its own expense, with all licensing and other requirements for the use of dumpsters in Philadelphia County. In the event Lessee does not have a contract with a commercial trash removal service.

### 11.   SECURITY DEPOSIT

(a)      Lessee will deposit with Lessor the sum of Two Thousand Five Hundred Dollars ($2,500.00) at the time of signing of this Lease Agreement as security for the faithful performance and observance by Lessee of the terms, provisions, and conditions of this Lease. It is agreed that in the event Lessee defaults in respect to any of the terms, provisions, and conditions of this Lease, including but not limited to, the payment of rent and additional rent, Lessor may use, apply, or retain the whole or any part of the security so deposited to the extent required for the payment of any rent and additional rent or any other sum as to which Lessee may expend or may be required to expend by reason of Lessee's default in respect of any of the terms, covenants, and conditions of this Lease, including but not limited to, any damages or deficiency in the reletting of the Demised Premises, whether such damages or deficiency accrued before or after summary proceedings or other re-entry by Lessor.  Upon notice from Lessor that sums have been so applied, Lessee shall within ten (10) days replenish the security deposit to its original amount.

(b)      In the event that Lessee shall fully and faithfully comply with all of the terms provisions, covenants, and conditions of this Lease, the security shall be returned to Lessee after the date fixed as the end of this Lease and after delivery of entire possession of the Demised Premises to Lessor, without interest.

(c)      In the event of a sale of the land and building, Lessor shall have the right to transfer the security to the buyer thereof and Lessor shall thereupon be released by Lessee from all liability for the return of such security; and Lessee agrees to look to the new Lessor solely for the return of said security.  It is agreed that the provisions hereof shall apply to every transfer of assignment made of the security to a new Lessor.

(d)      Lessee further covenants that he will not assign or encumber or attempt to assign or encumber the monies deposited herein as security and that neither Lessor nor their successors or assigns shall be bound by any such assignment, encumbrance, attempted assignment, or attempted encumbrance.

5

Case ID: 221202637
Case ID: 230602627

(e)     It is understood by Lessee that no part of the security is to be considered as any rental due under the terms of the Lease.

## 12.  TERMINATION OF LEASE

This Lease and the tenancy hereby created shall cease and terminate at the end of the original term hereof, or of any extension thereof, without the necessity of any notice from either party to the other to terminate the same, and Lessee hereby waives notice to vacate the Demised Premises and agrees that Lessor shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of the Demised Premises from a Lessee holding over to the same extent as if any required statutory notice had been given.  Lessee shall peaceably surrender possession of the Demised Premises at the expiration or sooner termination of this Lease.  In the event Lessee remains in possession of the Demised Premises after the expiration of this Lease and without the execution of a new lease or Lessor's written consent, it shall be deemed to the occupying of the Demised Premises as Lessee from month to month, subject to all of the conditions, provisions and obligations of this Lease as such may be applicable to month-to-month tenancy, cancelable by either party upon thirty (30) days written notice to the other; provided however, that during the month-to-month tenancy, the annual minimum rent shall be one hundred twenty five percent (125%) of the amounts specified herein.

## 13.  UTILITIES

(a)     Lessee agrees that it will not install any equipment which will exceed or overload the capacity of any utility facilities and that if any equipment installed by Lessee shall require additional utility facilities, the same shall be installed at Lessee's expense in accordance with plans and specifications to be approved in writing by Lessor.  Commencing upon the date hereof, Lessee shall be solely responsible for and shall promptly pay all charges for use or consumption for heat, oil, gas, electricity. In addition, Lessee shall pay 100% of all water and sewer charges to the building of the Demised Premises is a part  but shall  receive a $40.00/month credit from Lessor for each of any second and third floor residential tenant renting such apartments.  In no event shall Lessor be liable to Lessee for any damages sustained by Lessee because of an interruption or failure in supply of any utility to the Demised Premises, unless caused by the intentional act or gross negligence of Lessor.

6

Case ID: 221202637
Case ID: 230602627

(b)    Lessee acknowledges and agrees that Lessor reserves the absolute right (at Lessor's sole option) to place the gas utility used and consumed by Lessee at the Demised Premises in Lessor's name if the non-payment of such utility could result in a lien upon the Demised Premises and to charge Lessee for Lessee's use and consumption thereof at the same rates and amounts as would otherwise been charged by the utility company, with no additional surcharges, fees, costs or other sums added on by Lessor. In the event Lessee fails to pay Lessor for the use and consumption of such utility as provided in Section 13 (a), in addition to such failure constituting a default under this Lease entitling Lessor to all available remedies herein and at law,  Lessor shall have the right, upon seven (7) days prior written notice to Lessee, to instruct the applicable utility provider to disconnect such service without liability to Lessor for any damages sustained by Lessee as a result of such discontinuation of service.

14.    **REPAIRS AND MAINTENANCE**

(a)    Lessor will keep the roof and structural portions of the exterior walls of the Demised Premises in proper repair, excepting repairs required by any work or alterations made thereto by Lessee, and excepting any glass or doors, provided that in each case Lessee shall have given Lessor prior written notice of the necessity of such repairs, and provided further, that if any such repair is required because of Lessee's negligence or misuse, or the negligence or misuse of any of Lessee's agents, employees or customers, or other person using the Demised Premises with Lessee's consent, expressed or implied, or Lessee's failure to perform any of his obligations under this Section, such repair shall be the obligation of Lessee and not Lessor, and Lessor may at their option make such repair and add the cost thereof to the first installment of minimum rent which shall thereafter become due.

(b)    Lessee covenants and agrees to keep and maintain in good order, condition and repair all portions of the Demised Premises and every part thereof, including fixtures and equipment therein, except as herein before provided, including, but without limitation, the exterior and interior portions of all door checks, security gates, signs and canopy, windows, glass, plumbing and sewage facilities within the Demised Premises (including freeflow up to the main sewer line) fixtures, heating and air-conditioning equipment serving the Demised Premises and interior walls, floors and ceilings, including compliance with applicable building codes relative to fire extinguishers, the sprinkler system, if any, the fire alarm system, the electrical

Case ID: 221202637
Case ID: 230602627

system, the hydrant standpipe, the fire alarm system.  Lessee shall accomplish all repairs, alterations, replacements and modifications at its own expense and using materials and labor of kind and quality equal to or greater than the original work.

(c)     Lessee will surrender the Demised Premises at the expiration or early termination of this Lease in as good condition as when received, excepting only deterioration caused by ordinary wear and tear.

(d)     If any repairs required to be made by Lessee hereunder are not made within ten (10) days after written notice delivered to Lessee by Lessor (except that for emergency repairs, Lessor shall be required only to give the best notice possible under the circumstances), Lessor may at their option make such repairs, without liability to Lessee for any loss or damage which may result to Lessee's stock or business by reason of such repair, and Lessee shall pay to Lessor, upon demand, as additional rental hereunder, the cost of such repairs, plus interest at the Default Rate (defined in Paragraph 22 hereof) from the date of the payment by Lessor until repaid by Lessee.  Except as herein provided, Lessor shall have no obligation to repair, maintain, alter, replace or modify the Demised Premises or any part thereof, or any plumbing, heating, electric, air-conditioning or any other mechanical installation therein under no circumstances shall Lessor be obligated to repair, replace or maintain any plate glass or door or window glass.

(e)     Lessee covenants and agrees that it shall not, without the prior written consent of Lessor, make any alterations, improvements or additions to the exterior or structural portions of the Demised Premises.  All alterations, improvements or additions installed by Lessee shall remain upon the Demised Premises at the expiration or sooner termination of this Lease, and shall become the property of Lessor unless Lessor shall have given written notice to Lessee to remove the same, in which event Lessee shall remove such alterations, improvement and additions and restore the Demised Premises to the same good order and condition in which they are at the time of execution of this Lease.

15.     **LIABILITY AND HAZARD INSURANCE**

(a)     Lessee agrees at all times during the terms hereof, at Lessee's own expense, to procure and pay for comprehensive public liability insurance against loss or liability in connection with personal injury, property damage, or death from any accident in or about the

Case ID: 221202637
Case ID: 230602627

Demised Premises and the sidewalk fronting thereon, in the minimum amounts of Two Million Dollars ($2,000,000.00) single limit and One Hundred Thousand Dollars ($100,000.00) in the event of damage to property. Such insurance shall name Lessor as additional insured. Lessee shall deliver to Lessor evidence of said insurance coverage [as described in Paragraph 7(e)] issued by a company or companies of recognized responsibility and credit, licensed in the state in which the building is located, and to furnish to Lessor prior to the expiration of such policy evidence of renewal.

(b)     Lessee hereby indemnifies Lessor from the time Lessee goes into possession of the Demised Premises and continuing throughout the term hereof from and against any and all claims, actions, losses and judgments arising out of (i) injury to persons or damage to property sustained on or by reason of the Demised Premises, and any activities therein and (ii) the activities of Lessee and his agents, servants and employees within the Building, and agrees to defend at his sole cost and expense any claims made against Lessor in connection therewith. In no event shall Lessee be responsible for the intentional or negligent act or omission of Lessor.

(c)     Lessee further agrees to pay Lessor as additional rent the entire cost of all increase or increases in fire insurance premiums upon the Demised Premises and or the building of which the Demised Premises is a part due to an increase in the rate of fire insurance in excess of the rate on the Demised Premises at the time of the making of this Lease, if such increase is caused by any act or neglect of Lessee or the nature of Lessee's business.

## 16.     LEGAL AND INSURANCE REQUIREMENTS

Lessee agrees not to use or keep or allow the Demised Premises or any portion thereof to be used or occupied for any unlawful purpose or in violation of any certificate of occupancy or certificate of compliance covering or affecting the use of the Demised Premises or any portion thereof, and will not suffer any act to be done or any condition to exist on the Demised Premises or any portion thereof, or any article to be brought thereon, which may be dangerous, unless safeguarded as required by law, or which may, in law, constitute a nuisance, public or private or which may make void or voidable any insurance issued by Lessor's insurance company then in force on the Demised Premises or the Building.

## 17.     INSURANCE COMPANY REQUIREMENTS

If the public authorities or the Board of Fire Underwriters (sometimes known as the Middle Department Rating Bureau), or any of Lessor's insurance companies, require or

Case ID: 221202637
Case ID: 230602627

recommend for the purpose of maintaining or lowering insurance premiums or rate, the repair, replacement or alteration of any wiring or other electrical installations or other equipment placed or installed by Lessee upon or about the Demised Premises, Lessee agrees, upon written notice from Lessor, to cause the said work to be done in the manner recommended or required, and if Lessee fails to do so, Lessor shall have the right to do so and the cost thereof shall be paid by Lessee on demand of Lessor as additional rental hereunder.

### 18.   WAIVER OF SUBROGATION

(a)   Lessor hereby releases Lessee, to the extent of their insurance coverage from any and all liability, for any loss or damage caused by fire or any of the extended coverage casualties, provided, however, that this release shall be in force and effect only to the extent that loss or damage occurs during such time as Lessor's policies of fire and extended coverage insurance permit such release to be given without affecting said policies or the right of Lessor to recover thereunder.

(b)   Lessee hereby releases Lessor, to the extent of his insurance coverage from any and all liability, for any loss or damage caused by fire or any of the extended coverage casualties, provided, however, that this release shall be in force and effect only to the extent that loss or damage occurs during such time as Lessee's policies of fire and extended coverage insurance permit such releases to be given without affecting said policies or the right of Lessee to recover thereunder.

### 19.   ASSIGNMENT OR SUBLET

(a)   Lessee covenants and agrees that it shall not, without consent in writing of Lessor first had and obtained, which consent shall not be unreasonably withheld, assign, mortgage or pledge this Lease or under-let or sublease the Demised Premises, or any part thereof or permit any other person, firm or corporation to occupy the Demised Premises, or any part thereof; nor shall any assignee or sublessee assign, mortgage or pledge this Lease or such sublease, without an additional written consent by Lessor, and without such consent no such assignment, mortgage or pledge shall be valid.

(b)   In the event Lessee is a corporation or limited liability company, any dissolution, merger, consolidation or other reorganization of such entity or any pledge of, or any issue, sale or other transfer of a controlling percentage of the corporate stock or membership interests of Lessee (whether in a single transaction or cumulatively), or any transfer or change in

Case ID: 221202637
Case ID: 230602627

control of such corporation, shall constitute an assignment of this Lease for all purposes of this section. The term "controlling percentage", as used herein, shall mean the ownership of stock possessing, or having the right of exercise of at least fifty-one percent (51%) of the total combined voting power of all the classes of issued and outstanding stock or membership interests of such entity entitled to vote for the election of directors, whether such ownership be direct ownership, or indirect ownership through ownership of stock of another corporation. This subsection shall not apply whenever Lessee is a corporation the outstanding voting stock of which is listed on a recognized security exchange.

  (c) If Lessee is a partnership and if any time during the term hereof, or any extension thereof, the person or persons who at the time of execution of this Lease own or control the general partner's interest cease to own or control the general partners' interest (except as a result of transfers by bequest or inheritance), such cessation of ownership shall constitute an assignment of this Lease for all purposes of this Lease.

  **20.** **SIGNS**

  (a) Except for the existing signage, Lessee agrees not to place or permit on the outside of the building of the Demised Premises or on either side of any exterior window or door or anywhere outside of the Demised Premises any sign, placard, advertisement, illumination or projection and not to paint the outside or inside of the glass portion of any exterior door, or inside or outside of any exterior window thereof, without obtaining the prior written approval of Lessor, and Lessee further agrees to obtain and pay for all permits and licenses which may be required for the erection and maintenance of any sign and to obtain Underwriter's approval for all electric signs.

  (b) Lessee agrees to maintain all signs and canopies in good condition, keep all electric signs properly lighted, and to make all repairs required because of the installation and maintenance of signs and canopies including, but not limited to, any roof repairs that may be required because of the installation and maintenance of signs.

  Lessee further agrees to save harmless and indemnify Lessor from and against any and all losses, damages, claims, suits or actions for any damage or injury to person or property caused by the erection and maintenance of such signs or parts thereof, and insurance coverage for such signs shall be included in the comprehensive public liability policy which Lessee is required to furnish.

21.   **TRADE FIXTURES AND PERSONAL PROPERTY**

All trade fixtures and apparatus of Lessee in the Demised Premises shall remain the property of Lessee and shall be removable at the expiration or sooner termination of the term of this Lease or any renewal or extension thereof, provided Lessee shall not at such time be in default under any covenant or agreement contained  herein, and provided, further, that in the event of such removal Lessee shall promptly restore the Demised Premises  to the same good order and condition as obtained prior to the installation of such trade fixtures.  Any trade fixtures or personal property which shall remain in the Demised Premises or any part thereof after the expiration or earlier termination of this Lease shall be deemed to have been abandoned and either may be retained by Lessor as Lessor's property or may be disposed of in such manner as Lessor may see fit.  If such personal property or any part thereof shall be sold by Lessor, Lessor may receive and retain the proceeds of such sale(s) as Lessor's property.   Notwithstanding the foregoing, upon such expiration or sooner termination of the term of this Lease or any renewal or extension thereof, Lessor shall have the right to require Lessee to remove such trade fixtures or personal property by written notice to Lessee within thirty (30) days after expiration or earlier termination of the Lease and upon Lessee's failure to effect such removal, Lessor shall have the right to do so, charging to Lessee, as additional rent hereunder, the cost of such removal, required repairs to the Demised Premises necessitated thereby and storage charges incurred by Lessor with respect to said property.  The covenants contained in this Section shall survive the expiration or earlier termination of this Lease.

22.   **LESSOR'S RIGHTS TO PERFORM LESSEE'S COVENANTS**

If Lessee shall fail to perform any of the acts agreed to be performed by Lessee within the grace periods provided herein, then Lessor may perform the said acts or cause the same to be performed and the amount so paid or expended by Lessor with interest thereon at the rate equal to the prime rate of Citizens Bank, plus three percent (3%), as such may change from time to time ("Default Rate") (or the highest rate, up to said rate, permitted by law) shall be added and to be payable forthwith to Lessor as additional rent hereunder.  "Citizens Bank" shall mean any successor and in its absence a reasonable substitute bank or index as determined by Lessor.

23.   **LESSEE'S DEFAULTS - LESSOR'S REMEDIES**

(a)   Subject to the provisions of Paragraph 24, hereof, in the event Lessee shall

Case ID: 221202637
Case ID: 230602627

at any time be in default in the payment of minimum rent or additional rent herein reserved, or of any other sum required to be paid by Lessee under this Lease, or in the performance of or compliance with any other of the terms, covenants, conditions or provisions of this Lease, or if Lessee shall be adjudicated a bankrupt, or shall make an assignment for the benefit of creditors or shall file a bill in equity or otherwise initiate proceedings for the appointment of a receiver of Lessee's assets, or shall file any proceedings in bankruptcy or for reorganization or an arrangement under any federal or state law, or if any proceedings in bankruptcy or for the appointment of a receiver shall be instituted by any creditor of Lessee under any state or federal law, or if Lessee is levied upon and is about to be sold out upon the Demised Premises under execution or other legal process, or if there shall occur a dissolution, statutory reorganization or merger of Lessee, or if Lessee shall vacate or desert the Demised Premises, then an event of default shall be deemed to have occurred under this Lease.

(b)     Subject to the provisions of Paragraph 24 hereof, if an event of default shall occur then and in addition to any other rights or remedies Lessor may have under this Lease and at law or in equity, Lessor shall have the following rights:

(i)     To accelerate the whole or any part of the minimum rent and additional rent (sometimes collectively referred to in this Paragraph 23 as "rent") and other charges, payments, costs and expenses herein agreed to be paid by Lessee for the entire unexpired balance of the term of this Lease, and any rent, other charges, payments, costs and expenses if so accelerated, in addition to any and all installments of rent already due and payable and in arrears, and any other charge, expense or cost herein agreed to be paid by Lessee, shall be due and payable and in arrears as if by the terms of this Lease such were on that date payable in advance; and/or

(ii)    To enter the Demised Premises and without further demand or notice proceed to distress and sale of the goods, chattels and personal property there found, to levy the rent and Lessee shall pay all costs and officers' commissions, including watchmen's wages and sums chargeable to Lessor and in such case all costs, officers commissions and other charges shall immediately attach and become part of the claim of Lessor for rent, and any tender of rent without said costs, commissions and charges made, after the issuance of a warrant of distress, shall not be sufficient to satisfy the claim of the Lessor.

(iii)   To re-enter the Demised Premises and remove all persons and all

13

Case ID: 221202637
Case ID: 230602627

or any property therefrom, either by summary dispossess proceedings or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefore, and repossess and enjoy the Demised Premises, together with all alterations, fixtures, signs and other installations of Lessee.  Upon recovering possession of the Demised Premises by reason of or based upon or arising out of a default on the part of Lessee, Lessor may, at Lessor's option, either terminate this Lease or make such alterations and as may be necessary in order to relet the Demised Premises and relet the Demised Premises or any part  or parts thereof, either in Lessor's name or otherwise, for a term or terms which may at Lessor's option be less than or exceed the period which would otherwise have constituted the balance of the term of this Lease and at such rent or rents and upon such other terms and conditions as in Lessor's sole discretion may seem advisable and to such person or persons as may in Lessor's discretion seem best; upon each such reletting all rents received by Lessor from such reletting shall be applied first, to the payment of any indebtedness other than rent due hereunder from Lessee to Lessor: second, to the payment of any costs and expenses of such reletting, including brokerage fees, attorney's fees and all costs of such alterations and repairs; third, to the payment of rent due and unpaid hereunder, and the residue, if any shall be held by Lessor and applied in payment of future rent as it may become due and payable hereunder.  If such rent received from such reletting during any month shall be less than that to be paid during that month by Lessee hereunder, Lessee shall pay any such deficiency to Lessor.  Such deficiency shall be calculated and paid monthly.  No such re-entry or taking possession of the Demised Premises or the making of alterations and or improvements thereto or the reletting thereof shall be construed as an election on the part of Lessor to terminate this Lease unless written notice of such intention be given to Lessee.  Lessor shall in no event be liable in any way whatsoever for failure to relet the Demised Premises or, in the event that the Demised Premises or any part or parts thereof are relet, for failure to collect the rent thereof under such reletting.  Lessee, for Lessee and Lessee's successors and assigns, hereby irrevocably constitutes and appoints Lessor Lessee's and their agent to collect the rents due and to become due under all  subleases of the Demised Premises or any parts thereof without in any way affecting Lessee's obligation to pay any unpaid balance of rent due or to become due hereunder.  Notwithstanding any such reletting without termination, Lessor may at any time thereafter elect to terminate this Lease for such previous breach.

        (iv)     To terminate this Lease and the term hereby created without any

Case ID: 221202637
Case ID: 230602627

right on the part of Lessee to waive the forfeiture by payment of any sum due or by other performance of any condition, term or covenant broken. Whereupon Lessor shall be entitled to recover, in addition to any and all sums and damages for violation of Lessee's obligations hereunder in existence at the time of such termination, damages for Lessee's default in an amount equal to the amount of the rent reserved for the balance of the term of this Lease, as well as all other charges, payments, costs and expenses herein agreed to be paid by Lessee, all discounted at the rate of six percent (6%) per annum to their then present worth, less the fair rental value of the Demised Premises for the remainder of said term, also discounted at the rate of six percent (6%) per annum to its then present worth, all of which amount shall be immediately due and payable from Lessee to Lessor.

(c)     **SUBJECT TO THE PROVISIONS OF PARAGRAPH 24 HEREOF, IF LESSEE SHALL DEFAULT IN THE PAYMENT OF THE RENT RESERVED OR IN THE PAYMENT OF ANY OTHER SUMS DUE HEREUNDER BY LESSEE, LESSEE HEREBY AUTHORIZES AND EMPOWERS ANY PROTHONOTARY OR ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR LESSEE IN ANY AND ALL ACTIONS WHICH MAY BE BROUGHT FOR SAID RENT AND/OR SAID OTHER SUMS; TO CONFESS JUDGMENT AGAINST LESSEE FOR ALL OR ANY PART OF SAID RENT AND/OR SAID OTHER SUMS; INCLUDING BUT NOT LIMITED TO THE AMOUNTS DUE FROM LESSEE TO LESSOR UNDER SUBSECTIONS, (I), (II), (III) OF THIS SECTION; AND FOR INTEREST AND COSTS, TOGETHER WITH ATTORNEY'S FEES INCURRED FOR COLLECTION OF $5,000.00.   SUCH AUTHORITY SHALL NOT BE EXHAUSTED BY ONE EXERCISE THEREOF, BUT JUDGMENT MAY BE CONFESSED AS AFORESAID FROM TIME TO TIME AS OFTEN AS ANY OF SAID RENT AND/OR OTHER SUMS SHALL FALL DUE OR BE IN ARREARS, AND SUCH POWERS MAY BE EXERCISED AS WELL AFTER THE EXPIRATION OF THE INITIAL TERM OF THIS LEASE AND/OR DURING ANY EXTENDED OR RENEWAL TERM OF THIS LEASE AND/OR AFTER THE EXPIRATION OF ANY EXTENDED OR RENEWAL TERM OF THIS LEASE.**

(d)     **WHEN THIS LEASE AND THE TERM OR ANY EXTENSION OR RENEWAL THEREOF SHALL HAVE BEEN TERMINATED ON ACCOUNT OF ANY DEFAULT BY LESSEE HEREUNDER, AND ALSO WHEN THE TERM HEREBY CREATED OR ANY EXTENSION OR RENEWAL THEREOF SHALL HAVE EXPIRED, LESSEE HEREBY AUTHORIZES AND EMPOWERS ANY PROTHONOTARY OR ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR LESSEE IN ANY AND ALL ACTIONS WHICH MAY BE BROUGHT FOR THE RECOVERY BY LESSOR OF POSSESSION OF THE DEMISED PREMISES, AND CONFESSION OF JUDGMENT IN EJECTMENT FOR WHICH THIS LEASE SHALL BE THEIR SUFFICIENT WARRANT; THEREUPON, IF LESSOR SO DESIRES, AN APPROPRIATE WRIT OF POSSESSION MAY ISSUE FORTHWITH, WITHOUT ANY PRIOR WRIT OR PROCEEDING WHATSOEVER, AND PROVIDED THAT IF FOR**

Case ID: 221202637
Case ID: 230602627

ANY REASON AFTER SUCH ACTION SHALL HAVE BEEN COMMENCED IT SHALL BE DETERMINED AND POSSESSION OF THE DEMISED PREMISES REMAIN IN OR BE RESTORED TO LESSEE, LESSOR SHALL HAVE THE RIGHT FOR THE SAME DEFAULT AND UPON ANY SUBSEQUENT DEFAULT OR DEFAULTS OR UPON THE TERMINATION OF THIS LEASE OR LESSEE'S RIGHT OF POSSESSION AS HEREINBEFORE SET FORTH, TO CONFESS ONE OR MORE JUDGMENTS IN EJECTMENT AS HEREINBEFORE SET FORTH TO RECOVER POSSESSION OF THE DEMISED PREMISES.  SUCH AUTHORITY SHALL NOT BE EXHAUSTED BY ONE EXERCISE THEREOF, AND SUCH AUTHORITY MAY BE EXERCISED AS WELL AFTER THE EXPIRATION OF THE TERM OF THIS LEASE.

(e)   NOTWITHSTANDING THE CONFESSION OF JUDGMENT PARAGRAPHS DESCRIBED IN THE WARRANT OF AUTHORITIES TO CONFESS JUDGMENT, IF THIS LEASE AGREEMENT INCLUDES ANY PROVISION WHICH IS DEEMED TO BE A POWER OF ATTORNEY SUBJECT TO SECTION 5601.3 OF CHAPTER 56 OF THE PENNSYLVANIA PROBATE ESTATES AND FIDUCIARY CODE (A "POA PROVISION") EACH POA PROVISION IS HEREBY MODIFIED TO INCLUDE AN IRREVOCABLE WAIVER BY EACH PRINCIPAL, OF THE AGENT'S DUTIES SET FORTH IN SECTION 5601.3(b) OF SAID CHAPTER, EACH OF UNDERSIGNED PARTIES HEREBY ACKNOWLEDGING THAT IN VIEW OF THE COMMERCIAL NATURE OF THE RELATIONSHIP BETWEEN THE PARTIES HERETO THERE IS NO EXPECTATION THAT THE AGENT SHALL HAVE A DUTY UNDER ANY POA PROVISION TO ACT IN THE BEST INTEREST OF ANY PRINCIPAL THEREUNDER, AND IT IS AGREED THAT THE AGENT SHALL HAVE NO SUCH DUTY.

(e)   No right or remedy herein conferred upon or reserved to Lessor is intended to be exclusive of any other right or remedy herein or by law provided but each shall be cumulative and in addition to every other right or remedy given herein or now or hereafter existing at law or in equity or by statute.

(f)   For the purpose of calculating the "rent reserved for the balance of the term" of this Lease for the purposes of subsection (b) (iv) of this Section, the amount payable as Lessee's share of real estate taxes for the balance of the term hereof shall be equal to the sum of the highest amount paid or payable by Lessee in any calendar year for each of the foregoing items multiplied by the number of calendar years (including any fractional calendar year) remaining in the term of this Lease.

(g)   Lessee agrees to pay in addition any other sums reserved herein all sums which may become due by the failure of Lessee to comply with all the covenants of this Lease and any or all damages, cost and expenses which the Lessor may suffer or incur by reason of any

16

Case ID: 221202637
Case ID: 230602627

default of the Lessee or failure on his part to comply with the covenants of this Lease and also any and all damages to the Demised Premises caused by any act or neglect by the Lessee.

24.   **GRACE PERIODS**

(a)   Lessor shall not exercise any right or remedy provided for herein, because of any default hereunder unless, with respect to any money payment, Lessee shall have received from Lessor written notice of Lessee's failure to make such payment and Lessee shall thereafter fail to make such payment within a period of five (5) days, and unless, with respect to the obligations of Lessee other than the payment of money, Lessee shall have received notice from Lessor of Lessee's failure to fulfill each obligation and Lessee shall fail within a period of twenty (20) days thereafter to perform such obligation or if such obligation is of such nature as not to be performable within said twenty (20) day period, Lessee shall have failed within said period to begin and actively and diligently prosecute the performance of such obligation.

(b)   Notwithstanding anything to the contrary set forth in this Lease, if Lessee shall default either in the timely payment of rent or other charges required to be paid under this Lease or in the performance of any other covenant of this Lease more than two (2) times in any period of twelve (12) months, then, notwithstanding that such defaults shall have been cured, any further similar default within such twelve (12) month period shall be deemed to be a Deliberate Event of Default, and Lessor, without giving the Lessee any notice and without affording the Lessee an opportunity to cure the default (the Lessee hereby specifically waiving any right of tender), may exercise any or all of their rights under this Lease in addition to those they may have at law or in equity.

(c)   Notwithstanding the above, if payment of any charges is not received on or before the payment date or in the event a check is returned as a result of insufficient funds, a charge of five percent (5%) of the amount outstanding (or the highest percentage amount allowed by governmental authorities, if such is lower) shall be payable by Lessee as a late charge. The late charge shall be a minimum charge and shall not be prorated. The charge or collection of the late charge shall not waive any other rights of Lessor. In addition, any sums not paid when due shall bear interest until paid at the Default Rate.

(d)   No payment by Lessee or receipt by Lessor of a lesser amount than any installment or payment of rent or any other charge due shall be deemed to be other than on account of the amount due. No endorsement or statement on the check or payment shall be

17

Case ID: 221202637
Case ID: 230602627

deemed an accord and satisfaction.  Lessor may accept such check or payment without prejudice to Lessor's right to recover the balance of such installment or payment of rent or any other charge, or pursue any other remedies available to Lessor.

(e)     If Lessor retains the services of an attorney due to any default by Lessee in Lessee's obligations under this Lease, Lessor shall be entitled to recover reasonable attorneys fees and expenses from Lessee.

25.     **NOTICES**

All notices required to be given by either party to the other shall be given by Certified Mail, Return Receipt Requested, or recognized national overnight courier, addressed as follows:

To Lessor:          _____

To Lessee:          Demised Premises

26.     **LESSOR'S RIGHTS**

Lessee covenants and agrees that Lessor shall have the right to do the following things and matters in and about the Demised Premises:

(a)     At all reasonable times by themselves or their duly authorized agents to go upon and inspect the Demised Premises and every part thereof, and/or at their option and at their sole expense, make repairs, alterations and additions to the Demised Premises or the building of which the Demised Premises is a part.

(b)     To display upon the Demised Premises a "For Sale" sign after notice from either party of intention to terminate this Lease, or upon the occurrence of a default by Lessee or at any time within six (6) months prior to the expiration of this Lease, a "For Rent" sign or both "For Rent" and "For Sale" signs; and all of said signs shall be placed upon such part of the Demised Premises as Lessor may elect and may contain such matter as Lessor shall require. Prospective purchasers or Lessees authorized by Lessor may inspect the Demised Premises at reasonable hours.

(c)     The Lessor may discontinue all facilities furnished and services rendered by Lessor not expressly covenanted for herein, it being understood that they constitute no part of

Case ID: 221202637
Case ID: 230602627

the consideration for this Lease.

## 27.   RESPONSIBILITY OF LESSEE

Lessee agrees to be responsible for and to relieve and hereby relieves the Lessor from all liability by reason of any injury or damage to any property in the Demised Premises, belonging to the Lessee, caused by any fire, breakage or leakage in any part or portion of the Demised Premises, or any part or portion of the building of which the Demised Premises is a part, or from water, rain or snow that may leak into issue or flow from any part of the said Demised Premises, or of the building of which the Demised Premises is a part, or from the drains, pipes, or plumbing work of the same, or from any place or quarter, unless such breakage, leakage, injury or damage be caused by or result from the negligence of Lessor their servants or agents or any person or persons whatsoever.

## 28.   RESPONSIBILITY OF LESSOR

(a)    In the event that the Demised Premises is totally destroyed or so damaged by fire or other casualty not occurring through fault or negligence of the Lessee or those employed by or acting for him, that the same cannot be repaired or restored in the opinion of Lessor's architect within one hundred eighty (180) days, this Lease shall absolutely cease and determine and all rent shall abate for the balance of the term.

(b)    If the damage caused as above be only partial and such that the Demised Premises can be restored to their then condition in the opinion of Lessor's architect within one hundred eighty (180) days, the Lessor may, at their option, restore the same with reasonable promptness, reserving the right to enter upon the Demised Premises for that purpose. The Lessor also reserves the right to enter upon the Demised Premises whenever necessary to repair damage caused by fire or other casualty to the building of which the Demised Premises is a part, even though the effect of such entry be to render the Demised Premises or a part thereof untenantable. In either event the rent shall be apportioned and suspended during the time the Lessor is in possession, taking into account the proportion of the Demised Premises rendered untenantable and the duration of the Lessor's possession. If a dispute arises as to the amount of rent due under this clause, Lessee agrees to pay the disputed amount into an escrow account until the amount of such rent is determined by an independent arbitrator or a court of law.

(c)    Lessor shall make such election to repair the Demised Premises or terminate this Lease by giving notice thereof to Lessee within forty five days from the day

Case ID: 221202637
Case ID: 230602627

Lessor receives notice that the Demised Premises have been destroyed or damaged by fire or other casualty.

(d)   Lessor shall not be liable for any damage, compensation or claim by reason of inconvenience or annoyance arising from the necessity of repairing any portion of the building, the interruption in the use of the Demised Premises, or the termination of this Lease by reason of the destruction of the Demised Premises.

**29.   MECHANIC'S LIENS**

If any mechanic's or materialman's lien shall at any time be filed against the Demised Premises or any part thereof, or any encumbrance, charge, mortgage, title retention or security agreement be filed against the Demised Premises or any part thereof, by reason of any work, labor or services, or materials or equipment furnished to or for Lessee, Lessee within ten (10) days after notice of the filing thereof, will cause the same to be discharged of record by payment, deposit, bond, order of a court of competent jurisdiction or otherwise. If Lessee shall fail to cause any of the foregoing to be discharged within said period then, in addition to any other right or remedy, Lessor may, but shall not be obligated to, discharge the same whether by paying the amount claimed to be due or by procuring the discharge of such lien by deposit or by bonding proceedings, and in any such event, Lessor shall be entitled, if Lessor so elects, to compel the prosecution of an action for the foreclosure of such lien by the lienor, and to pay the amount of the judgment in favor of the lienor with interest, costs and allowances.  Any amount so paid by Lessor and all costs and expenses incurred by Lessor in connection therewith, together with interest thereon at the legal rate then obtaining from the respective dates of Lessor's making of the payment or incurring of the costs and expense, shall constitute additional rent payable by Lessee under this Lease and shall be paid to Lessor by Lessee on demand.  Nothing herein contained shall obligate Lessee to pay or discharge any lien created by Lessor.

Nothing in this Lease shall be deemed or construed in any way as constituting the consent or request of Lessor, express or implied by inference or otherwise, to any contractor, sub-contractor, laborer or materialman for the performance of any labor or the furnishing of any materials for any specific improvement, alteration to or repair of the Demised Premises or any part thereof, nor as giving Lessee any right, power or authority to contract for or permit the rendering of any services or the furnishing of any materials that would give rise to the filing of any lien against the Demised Premises or any part thereof.

Case ID: 221202637
Case ID: 230602627

30.   **ESTOPPEL STATEMENT**

So long as Lessor is not in default under the terms of this Lease, within ten (10) days after request therefore by Lessor or any mortgage of Lessor, or if upon any sale, assignment or hypothecation of the Demised Premises and/or the land thereunder by Lessor, an estoppel statement shall be required from Lessee, Lessee agrees to deliver in recordable form a statement in writing to any proposed mortgagee or purchaser, or to Lessor, certifying (if such be the case) that this Lease is unmodified and in full force and effect, that Lessee has accepted the Demised Premises and is in possession thereof, that Lessee has commenced the payment of rent, that Lessor is not in default under this Lease, that there are no defenses or offsets to the Lease claimed by Lessee and any other matters reasonably requested.

31.   **CONDEMNATION AWARDS**

In the event that the Demised Premises or any part thereof is taken or condemned for a public or quasi-public use, this Lease shall, as to the parts so taken, terminate as of the date title shall vest in the condemner, and rent shall abate in proportion to the square feet of leased space taken or condemned or shall cease if the entire Demised Premises is taken. In either event the Lessee waives all claims against the Lessor by reason of the complete or partial taking of the Demised Premises. Notwithstanding any provisions to the contrary herein contained, Lessee hereby waives as against Lessor and as against any condemner all right to make any claim for any award by virtue of the entire or partial taking or condemnation of the Demised Premises, provided, however, that this waiver shall not apply to any claim the assertion and collection of which would not reduce the award to which Lessor would otherwise be entitled.

32.   **LESSEE; LESSOR; LESSOR LIABILITY**

(a)      Lessor represents that they are the owners of the real estate upon which the Demised Premises is located. Lessor represents that they are the holder of such rights as of the date of execution hereof. In the event of the voluntary transfer of such ownership or right to a successor-in-interest of Lessor, Lessor shall be freed and relieved of all liability and obligations hereunder which shall thereafter accrue, (and, as to any unapplied portion of Lessee's security deposit, Lessor shall be relieved of all liability therefore upon transfer of such portion to their successor in interest) and Lessee shall look solely to such successor in interest for the performance of the covenants and obligations of the Lessor hereunder which shall thereafter accrue. Notwithstanding the foregoing, no mortgage or ground lessor which shall succeed to the

Case ID: 221202637
Case ID: 230602627

interest of Lessor hereunder (either in terms of ownership or possessory rights) shall:

      (i)     Be liable for any previous act or omission of a prior lessor;

      (ii)    Be subject to any rental offsets or defenses against a prior lessor;

      (iii)   Be bound by any amendment of this Lease made without his

written consent or by payment of Lessee of rent in advance in excess of one month's rent; or

      (iv)   Be liable for any security not actually received by him.  Subject to the foregoing, the provisions hereof shall be binding upon and inure to the benefit of the successors and assigns of Lessor.  Notwithstanding anything to the contrary contained in this Lease, any liability of Lessor, their agents, partners or employees, arising out of or in respect of this Lease, the Demised Premises or the Building, shall be limited to Lessor's estate or other title or interest in the Demised Premises, and, if Lessor shall default in the performance of Lessor's obligations under this Lease or otherwise, Lessee shall look solely to the equity of Lessor in their interest in the Demised Premises.

    **33.**   **MISCELLANEOUS**

      (a)    It is hereby agreed, any law, usage or custom to the contrary notwithstanding, that Lessor shall have the right at all times to enforce the provisions of this Lease in strict accordance with its terms, notwithstanding any conduct or custom on the part of the Lessor in refraining from doing so at any time or times, and further, that the failure of Lessor at any time to enforce their rights under said covenants strictly in accordance with the same shall not be construed as having created a custom in any way or manner contrary to the specific terms, provisions and covenants of this Lease.

      (b)    All of the remedies given to Lessor and all of the rights given to them by law and equity shall be cumulative and concurrent.  No determination of this Lease or the taking or recovering of the Demised Premises shall deprive Lessor of any of their  remedies or actions against the Lessee for rent due at any time, or which under the terms hereof would in the future become due as if there has been no determination, or for the sums due at the time or which, under the terms hereof, would in the future become due as if there had been no determination, nor shall the bringing of any action for rent or breach of covenant, or the resort to any other remedy herein be construed as a waiver of the right to obtain possession of the Demised Premises.

      (c)    This Agreement of Lease and all of its terms covenants provisions are and

Case ID: 221202637
Case ID: 230602627

each of them is subject and subordinate to any and all mortgages and other encumbrances now or hereafter placed upon the Demised Premises or upon the land and/or the Building containing the same, and the Lessee expressly agrees that if Lessor's tenancy, control or right to possession shall terminate by either expiration, forfeiture or otherwise, than this Lease shall thereupon immediately terminate and then the Lessee shall thereupon give immediate possession and Lessee hereby waives any and all claims for damages or otherwise by reason of such termination as aforesaid.

(d)      It is expressly understood and agreed by and between by the parties that this Lease sets forth all of the promises, agreements, conditions and understandings between Lessor and the Lessee relative to the Demised Premises and that there are no promises agreements conditions or understandings, either oral or written between them other than those that are herein set forth.  It is further understood and agreed that no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Lessor or Lessee unless reduced to writing and signed by them.

### 34.   **BINDING EFFECT**

The submission by Lessor of this Lease for execution by Lessee and the actual execution and delivery thereof by Lessee to Lessor shall have no binding force and effect unless and until Lessor shall have executed this Lease and a duplicate original thereof shall have been delivered to Lessee.

### 35.   **RELATIONSHIP OF THE PARTIES**

Nothing herein contained shall be deemed or construed as creating a relationship of principal and agent or a partnership or joint venture between Lessor and Lessee; it being understood and agreed that neither the method of computing rent nor any
another provisions contained herein nor any acts of Lessor and Lessee shall be deemed to create any relationship between the parties other than that of Lessor and Lessee.

### 36.   **OFAC CERTIFICATION**

(a)      Lessee certifies that it is not acting, directly or indirectly, for or on behalf of any person, group, entity, or nation named by any Executive Order or the United States Treasury Department as a terrorist, "Specifically Designated National and Blocked Person" or other banned or blocked person, entity, nation, or transaction pursuant to any law, order, rule, or regulation that is enforced or administered by the Office of Foreign Assets Control; and

Case ID: 221202637
Case ID: 230602627

(b)   It is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity, or nation.

(c)   Lessee hereby agrees to defend, indemnify, and hold harmless Lessor from and against any and all claims, damages, losses, risks, liabilities, and expenses (including attorney's fees and costs) arising from or related to any breach of the foregoing certification.

**IN WITNESS WHEREOF,** the parties hereto have executed these presents the day and year first above written, and intend to be legally bound thereby.

**LESSEE:**                                                      **LESSOR:**

**GUIDOS EXPRESS INC.**

BY: _____ (SEAL)          _____ (SEAL)

Umair  Ahmad                                            **STEFANOS HAVIARAS**
Cheema                                                       **Authorized representative for**
                                                                     **owners of record**

24

Case ID: 221202637
Case ID: 230602627

## CONFESSION OF JUDGMENT
### DISCLOSURE STATEMENT

| | | |
|---|---|---|
| **LESSOR** | : | **STEFANOS HAVIARAS** |
| **LESSEE** | : | **GUIDOS EXPRESS INC.** |
| | : | |
| **PROPERTY** | : | **2329 E YORK STREET** |
| | : | **PHILADELPHIA, PENNSYLVANIA** |
| | : | |
| | : | |
| **DATE** | : | _____, 2022 |

1.  TODAY, LESSEE IS SIGNING A LEASE AGREEMENT ("LEASE") OBLIGATING LESSEE TO PAY THE MONIES SET FORTH THEREON TO LESSOR AND OTHERWISE COMPLY WITH THE PROVISIONS OF THE LEASE.

2.  LESSEE ACKNOWLEDGES THAT LESSEE'S COUNSEL HAS EXPLAINED TO LESSEE THAT THE LEASE LESSEE IS SIGNING CONTAINS CONFESSION OF JUDGMENT PROVISIONS THAT PERMIT THE LESSOR TO OBTAIN A JUDGMENT AGAINST LESSEE FOR MONIES AND POSSESSION OF THE PROPERTY IN THE EVENT OF A DEFAULT OF THE LEASE. LESSEE'S COUNSEL HAS ALSO EXPLAINED TO LESSEE THAT THE JUDGMENT MAY BE OBTAINED AGAINST LESSEE WITHOUT PRIOR NOTICE TO LESSEE AND WITHOUT OFFERING LESSEE THE OPPORTUNITY TO DEFEND AGAINST THE ENTRY OF THE JUDGMENT BEFORE IT IS FILED WITH THE COURT, AND THAT THE JUDGMENT MAY BE COLLECTED BY ANY LEGAL MEANS.

3.  LESSEE'S COUNSEL HAS ALSO EXPLAINED TO LESSEE THAT COLLECTION OF THE JUDGMENT MAY BE ACCOMPANIED BY THE ISSUANCE OF A WRIT OF EXECUTION, WRIT OF POSSESSION, GARNISHMENT, LEVY AND/OR OTHER EXECUTION PROCEEDINGS WHICH MAY BE COMMENCED AGAINST LESSEE PURSUANT TO Pa.R.C.P. 2950 ET SEQ. AND THAT EXECUTION PROCEEDINGS MAY INVOLVE THE SEIZURE AND SALE OF LESSEE'S PROPERTY AND EVICTION BY A SHERIFF, MARSHAL OR OTHER AUTHORITY.

4.  IN SIGNING THE LEASE, LESSEE IS KNOWINGLY, UNDERSTANDINGLY AND VOLUNTARILY CONSENTING TO THE CONFESSION OF JUDGMENT AND

LESSEE IS WAIVING LESSEE'S RIGHT, FOLLOWING A DEFAULT UNDER THE LEASE, TO THE EXTENT PERMITTED BY LAW, TO RESIST THE ENTRY OF JUDGMENT AGAINST LESSEE INCLUDING:

(a)    THE RIGHT TO NOTICE AND A HEARING;

———

(b)    THE RIGHT TO REDUCE OR SET-OFF A CLAIM BY DEDUCTING A CLAIM LESSEE MAY HAVE AGAINST LESSOR (CALLED THE "RIGHT OF DEFALCATION");

———

(c)    RELEASE OF ERROR;

———

(d)    INQUEST (THE RIGHT TO ASCERTAIN WHETHER THE RENTS AND PROFITS OF LESSEE'S REAL ESTATE WILL BE SUFFICIENT TO SATISFY THE JUDGMENT WITHIN SEVEN (7) YEARS.

———

5.    IN SIGNING THE LEASE, LESSEE IS KNOWINGLY, UNDERSTANDINGLY AND VOLUNTARILY CONSENTING TO THE ISSUANCE AND PURSUIT AGAINST LESSEE OF EXECUTION, POSSESSION, EJECTION, GARNISHMENT, LEVY AND/OR OTHER EXECUTION PROCEEDINGS AND WAIVING LESSEE'S RIGHTS, TO THE EXTENT PERMITTED BY LAW, TO NOTICE AND A HEARING PRIOR TO THE ISSUANCE AND PURSUIT OF EXECUTION, POSSESSION, EJECTION, GARNISHMENT, LEVY AND/OR OTHER EXECUTION PROCEEDINGS.

———

6.    LESSEE CERTIFIES THAT:

(a)    IT HAS DISCUSSED THIS DISCLOSURE STATEMENT WITH LESSEE'S ATTORNEY AND THE ATTORNEY FULLY EXPLAINED TO LESSEE THE CONTENTS AND MEANING OF THE PROVISIONS SET FORTH HEREIN.

———    ———    ———    ———

THE TERMS USED HEREIN SHALL BE CONSTRUED AS USED AND/OR DEFINED IN THE LEASE.

**IN WITNESS WHEREOF,** THE UNDERSIGNED, INTENDING TO BE LEGALLY BOUND HEREBY, HAVE HEREUNTO SET THEIR HAND AND SEAL THE DAY AND YEAR FIRST ABOVE WRITTEN.

**LESSEE:**
GUIDOS EXPRESS INC.

BY: _____(SEAL)

✗ In Case of a default, Landlord will send a notice to tenant, and tenant will have 10 days to cure the default, after that Landlord will use his confession of judgement clause.

*Stephanos Hanushan*

# EXHIBIT B

## BUSINESS PERSONAL PROPERTY VALUATION FORM

| Insured: | Guidos Express, Inc | | Today's Date: | |
| Claim #: | 177000 | | Coverage Amount: | |
| Date of Loss: | 9/14/2022 | | Coverage Required: | |

| Asset or Group No | Item Description | Year Acquired | Original Cost |
|---|---|---|---|
| ALARM | Alarm Equipment | 2021 | $2,500 |
| CAMERA | Camera & Video Equipment | | |
| RETAIL FOR SALE | Soda, Drinks, Snacks, etc. | 2022 | $ 6,000.00 |
| FRIDE, FREEZER | Refrigerators & Freezers (Walk-in/Reach-in | 2020 | $ 53,000.00 |
| FURNITURE | Tables, chairs, bar stools, etc | 2021 | $ 16,500.00 |
| INVENTORY | Food | 2022 | $ 44,000.00 |
| INVENTORY | Service Line Equipment, metal spoons, metal forks, tongs, etc. | 2022 | $ 9,700.00 |
| KITCHEN | Ovens, Food Warmer, Mixers, etc. | 2020 | $ 58,000.00 |
| INVENTORY | To go boxes, paper page, plastic ware, napkins, paper items, etc. | 2022 | $ 12,200.00 |
| KITCHEN | Kitchen Equipment, | 2021 | $ 16,700.00 |
| MACHINERY | Machinery & Equipment - Tools | 2020 | $ 82,900.00 |
| SUPPLIES | Office Supplies - Paper, pens, File Cabinets, etc. | 2022 | $ 3,700.00 |
| BUSINESS EQUIP | Cash Registers, Credit Card Scanners, | 2022 | $ 21,000.00 |
| BUSINESS EQUIP | Computer - PC, Laptops, Desktopes, Printers, Copiers, Fax Machine, Monitors, etc. | 2021 | $ 7,500.00 |
| AUDIO EQUIP | Speakers, Sound System, Televisions | 2020 | $ 12,000.00 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **BUSINESS PERSONAL PROPERTY VALUATION TOTALS** | | | **$ 345,700.00** |
| | | | |
| | Coverage Amount Carried: | $ 152,000.00 | |
| | Coverage Amount Required: | $ 256,320.00 | |
| | Percentage Insured To Value: | 59.30% | |
| | | | |
| | | | |
| | **CO-INSURANCE VARIANCE** | **40.70%** | |

| |
|---|
| 9/29/2022 |
| $ 152,000.00 |
| $ 256,320.00 |
| **Revised Cost** |
| $ 2,500.00 |
| $ 6,000.00 |
| $ 50,000.00 |
| $ 14,000.00 |
| $ 44,000.00 |
| $ 9,000.00 |
| $ 50,000.00 |
| $ 12,200.00 |
| $ 15,000.00 |
| $ 75,000.00 |
| $ 3,700.00 |
| $ 21,000.00 |
| $ 7,000.00 |
| $ 11,000.00 |
| |
| |
| |
| |
| **$ 320,400.00** |
| |
| |

# EXHIBIT C

FILED
31 AUG 2023 02:27 pm
Civil Administration
B. KOCH

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION

| | | |
|---|---|---|
| Guido's Express, Inc. | : | |
| | : | __June__ TERM 20 _23_ |
| Plaintiff | : | |
| | : | |
| v. | : | No.: __02627__ |
| | : | |
| Western World Insurance Co and AIG Claims, Inc | : | |
| Defendant | : | CASE MANAGEMENT |
| | : | CONFERENCE MEMORANDUM |
| | : | |

**DISCLAIMER**:

**THIS DOCUMENT IS SOLELY USED FOR CASE MANAGEMENT PURPOSES
AND SHALL NOT BE USED FOR ANY OTHER PURPOSE.**

Date and Time of the Case Management Conference:   September 28, 2023

Filing Party: Guido's Express, Inc.

Attorney of Record:  Walter J.Timby, III                          BAR ID: 23894

Address of Attorney: 100 W. ^th St., Suite 204, Media, PA 19063

Email and Telephone for Filing Attorney:   wtimby@gibperk.com 610/565-1708

| | |
|---|---|
| Personal Injury | Complete Section I |
| Real Estate case type | Complete Section II |
| All other case types | Complete Section III |

## SECTION III – ALL OTHER CASE TYPES

*This section is to be completed in all cases other than personal injury or real estate-related*

1. Date of contract or transaction: 2/22/2022

2. Date of Birth of your client: n/a          Age on date of transaction:  Corporation

                                              Unknown          Decline to provide

***NOTE: Date of birth information is intended for the Court's use only. The information will not be made available to the public.***

3. Is there a writing?          YES: ✘          NO:

   If yes, is there an allegation that the writing does not contain the entire agreement of the parties?

                                              YES:          NO: ✔

4. Is the Uniform Commercial Code applicable to this case?          YES:          NO: ✔

5. Set forth a summary of facts giving rise to the cause of action:

   Defendants Western World and AIG Claim Services breached the Insurance Contract/Policy issued to Guido's and refused to indemnify Guido's for Property Losses Incurred

6. Are there any related cases or claims pending?          YES: ✔ NO:

   If so, list caption(s), docket number(s) or other appropriate identifiers:

   Guido's Express v. Haviaras et al. Philadelphia CCP 221202637

7. State the amount of damages claimed by Plaintiff:

       (a)     Direct     152,000

       (b)     Consequential

       (c)     Other (specify)

8.  Set Forth a summary of facts in support of applicable defense(s) or any counterclaim: N/A

If there is a counterclaim, state the amount of damages sought:

   (a) Direct:

   (b) Consequential:

   (c) Other (specify)

9.     Identify all applicable insurance coverage:

| *Defendant* | *Insurance Carrier* | *Coverage Limits* |
|---|---|---|
| Western World  Insurance | | $152,000.00 |
| AIG Claims Inc | | |

10.    Demand: $   152,000.00       Offer: 0.00
         $

# EXHIBIT D

**BUTLER WEIHMULLER KATZ CRAIG** LLP
By:   Richard D. Gable, Jr., Esquire
      Attorney ID No.:  65842
      Todd H. Zamostien, Esquire
      Attorney ID No. 203133
1818 Market Street, Suite 2740
Philadelphia, PA  19103
Telephone:  (215) 405-9191
Facsimile:   (215) 405-9190

*Attorneys for Defendants, Western World Insurance Company and AIG Claims, Inc.*

| | |
|---|---|
| GUIDO'S EXPRESS INC. A/K/A KEY PIZZA, | IN THE COURT OF COMMON PLEAS |
| Plaintiff, | PHILADELPHIA COUNTY |
| v. | Case No. 230602627 |
| WESTERN WORLD INSURANCE COMPANY | |
| and | |
| AIG CLAIMS, INC. | |
| Defendants. | |

## DEFENDANTS' NOTICE OF FILING NOTICE OF REMOVAL

TO THE PROTHONOTARY:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants, Western World Insurance Company and AIG Claims, Inc., have filed a Notice of Removal with the Clerk of the United States District Court for the Eastern District of Pennsylvania.  A true and correct copy of the Notice of Removal, without its enclosures, is attached hereto as Exhibit A.

BUTLER WEIHMULLER KATZ CRAIG LLP

s/ Richard D. Gable, Jr._____

RICHARD D. GABLE, JR., ESQ.
rgable@butler.legal
TODD H. ZAMOSTIEN, ESQ.
tzamostien@butler.legal
*Attorneys for Defendants, Western World Insurance*
Dated:  <u>October 6, 2023</u>     *Company and AIG Claims, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Richard D. Gable, Jr., hereby certify that on this 6th day of October 2023, a true and correct copy of the foregoing Notice of Filing Notice of Removal has been served, via the Court's electronic filing system, upon the following:

Walter J. Timby, III, Esq.
Paul Fellman, Esq.
Gibson & Perkins, P.C.
100 W. 6th Street, Suite 204
Media, PA  19063
*Attorneys for Plaintiff*

s/ Richard D. Gable, Jr.
RICHARD D. GABLE, JR., ESQ.